STATE, Respondent, v. GOODWIN, Appellant.

(225 N. W. 214.)

(File No. 6611.   Opinion filed May 7, 1929.)

*Martens & Goldsmith,* of Pierre, for Appellant.

*Buell F. Jones,* Attorney General, *Bernard A. Brown,* Assistant Attorney General, and *F. W. Lambert,* State's Attorney, of Ft. Pierre, for the State.

CAMPBELL, J.  Defendant was informed against for grand larceny claimed to have been committed by the stealing of certain horses.  He was found guilty by a jury, and from the judgment of conviction and denial of his motion for a new trial he has now appealed.

Appellant maintains that the evidence is insufficient to support the verdict; that the trial judge erred in numerous rulings on the admission and rejection of testimony; and that the state's attorney was guilty of misconduct.

Defendant was about 27 years of age at the time of the trial, and testified without dispute as to his occupation and antecedents, as follows: "I have lived in Vivian or vicinity for twenty-one years.  I am twenty-seven years old, and am married.  I came here with my father from Iowa, and we moved on a ranch about ten miles north of Vivian where I remained until 1919 engaged in farming and stock raising.  In 1919 I went to Vivian and engaged in the garage business in which I continued until 1923 when I sold out, and since then have engaged in buying and selling horses and cattle, having had considerable experience with horses and cattle as a boy on the farm.  Aside from the farm my father had a house in Vivian which was used for his home in town, and lived in by my father and mother, and the last few years they have used it for the children going to school in the winter and I stayed there practically all of the time.  In September, 1925, I was engaged in buying horses which I sold to the Sioux City Horse and Mule Company.  I bought horses in all directions from Vivian."

The horses in question were taken by some one from a large partially inclosed tract of land some 10 miles southwest of Ft. Pierre, where they were accustomed to range and where some of them were last seen by the owners about noon on Sunday, September 27, 1925.  This partially inclosed tract of semi-open range was used in common by a number of adjacent landowners and ranchers for their stock, being sometimes referred to as the "pool pasture."  The horses were shipped by the appellant from Vivian, S. D. (together with two other carloads of horses), to the Sioux City market, by train leaving Vivian in the early morning of Tues-

day, September 29, 1925. Appellant admitted that he had possession of the horses and shipped and sold them, but claimed that he bought the horses from one Francis Hughes, who stated to appellant that he was engaged, with his father, in ranching and horse raising on a tract of land adjacent to that from which the animals in question were taken; the Hughes ranch being admittedly one of the outfits that was accustomed to participate in the use of this semi-open range and run stock thereon. Appellant testified that he had a talk with Francis Hughes (with whom he had some casual previous acquaintance) in Vivian early in the week of September 20, 1925, in which Hughes stated, in substance, that he (Hughes) was quitting farming and that he and his father had a bunch of horses that they wished to dispose of; that appellant, in answer to this, told Hughes that he (appellant) was buying some horses and would be shipping some the first of the following week, and that if they had a load and the price was right he might buy them; that as a result of that conversation, appellant arranged to go to Ft. Pierre on Thursday, September 24, 1925, and meet Francis Hughes for the purpose of looking at the horses. Appellant testified that he did go to Ft. Pierre on Thursday, and that Francis Hughes took him out to the place where the animals were ranging, and after looking over various animals and "dickering" for some little time, he agreed to purchase 24 head for $475, paying Hughes $25 in cash at the time; the balance to be paid when the horses were delivered. He testified that he told Hughes to bring the horses to the Charles Goodwin ranch about 10 miles from Vivian (Charles Goodwin being appellant's father), and told him where to put the horses if he arrived at the ranch with them at a time when the appellant did not happen to be there; that Hughes said he would probably deliver the horses at the ranch on Sunday; and that Hughes did in fact so deliver them, arriving there about 6 or 7 o'clock Sunday evening. Appellant further testified that the horses remained there at his father's ranch until Monday afternoon, when, with some assistance, he drove them into Vivian and left them in the stockyards until they were loaded and shipped early Tuesday morning.

At the trial, and during the state's evidence offered in rebuttal after the defense had rested, over objection of the appellant (the validity of which objection we specifically refrain from passing

upon), one of the state's witnesses, a deputy sheriff, was permitted to testify, with reference to a conversation claimed to have been had with appellant at or about the time of his arrest, as follows: "I asked John Goodwin if Francis Hughes had anything to do with this, and he said, 'No.'" And the deputy sheriff gave further testimony to the same general effect.

■ ■ Thereafter, and at the proper time, the appellant called Charles E. Goodwin, appellant's father, and sought to show by him that on Monday, when the horses were at his ranch and appellant came out to make preparations for driving them to Vivian for shipment, appellant stated to the witness that he had purchased these horses from Francis Hughes. To this offer of testimony the state objected, and the objection was sustained. This ruling of the court was clearly erroneous. It is the law of this state that when testimony is offered in the nature of impeachment, seeking to show prior inconsistent statements of a witness and thereby to create the inference that the present testimony of the witness so sought to be impeached is a recent contrivance, the inference thus attempted to be created may be rebutted by showing prior consistent statements out of court; such testimony being made admissible by the previous attempt at impeachment. The matter is fully discussed and the rule clearly established in a careful opinion by Judge Corson in State v. Caddy, 15 S. D. 167, 87 N. W. 927, 91 Am. St. Rep. 666. This rule has also had the approval of this court in Re McClellan's Estate, 21 S. D. 209, 111 N. W. 540; and Re Olson's Estate, 54 S. D. 184, 223 N. W. 41. See also Wigmore on Evidence (2d Ed.) §§ 1126, 1129.

■ Without undertaking to set out in any detail the evidence in this case or to review the sufficiency thereof to support the verdict, we may say that there was no direct evidence of any asportation by the appellant or any knowledge thereof or participation therein, and the evidence relied upon to connect him in any way with any act of larceny was entirely circumstantial. Conceding, without deciding the point one way or the other, that the evidence may be deemed sufficient to support the verdict, it is our opinion that the case upon the facts is close and that the jury might very well have found the other way. Under these circumstances, we are unable to say that the error above pointed out in rejecting appellant's effort to rehabilitate his testimony after impeachment by

proving prior consistent statements was not prejudicial. We are therefore of the opinion that the case must be reversed.

We are also of the opinion that the court committed error prejudicial to appellant in some of the other rulings shown by the record; but inasmuch as the case must be reversed because of the error above discussed, and the other rulings referred to which we deem erroneous are not such as are likely to be repeated upon a new trial, we do not think it would be helpful to undertake to set them out or treat them in detail.

The judgment and order appealed from are reversed.

MISER, C., sitting in lieu of BROWN, J., absent.

SHERWOOD, P. J., and POLLEY, BURCH, and MISER, JJ., concur.